UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RAMON PEREZ,<br><br>*Plaintiff*,<br>VS.<br><br>THE RHODE ISLAND PUBLIC UTILITIES COMMISSION and THE STATE OF RHODE ISLAND,<br><br>*Defendants*, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No.: 06-0378-ML |

**PLAINTIFF, RAMON PEREZ' MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION**

NOW COMES the plaintiff, Ramon Perez, by and through counsel, and herewith moves this Honorable Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a Temporary Restraining Order, and thereafter, a Preliminary and Permanent Injunction, as prayed in the plaintiff's Verified Complaint, filed contemporaneously herewith. The plaintiff seeks this Honorable Court to restrain and enjoin the defendants, from implementing and/or otherwise enforcing S2877, amending the prior provisions of R.I. Gen Laws 39-14-8, until hearing on its adverse impact and the legality or constitutionality thereof .

As grounds therefor, the plaintiff incorporates by reference the factual statements as set forth in his Verified Complaint and the Memorandum of Law accompanying the same..

WHEREFORE, the plaintiff prays the foregoing relief as aforesaid.

Plaintiff,
RAMON PEREZ,
By his Attorney,

Emili Vaziri, Esquire (#4952)
160 Plainfield Street
Providence, RI 02909
(401) 944-6430
FAX: (401) 944-4161

***NOTICE OF HEARING:*** ***PLEASE TAKE NOTICE*** the within Motion shall be brought on for hearing on the _____ day of August, 2006, on plaintiff's Motion for a Temporary Restraining Order at ____ _.m., before a Judge or Magistrate of this Honorable Cause, and notice thereof shall be remitted to the defendants' counsel upon notification of the same.

Emili Vaziri, Esquire

**CERTIFICATION**

I hereby certify that I caused to be served a true and correct copy of the within Motion, upon William Leuker, Esquire and Rebecca Partington, Esquire, bothe of the Department of the Attorney General, 150 South Main Street, Providence, RI 02903; RIPUC, legal Counsel, 88 Jefferson Boulevard, Warwick, RI 02888, and Division of Public Utilities, Legal Counsel, 89 Jefferson Boulevard, Warwick, RI 02889 by in hand service and via facsimile transmission, a copy of the same, this day, the 30th of August, 2006, to the above-named legal representatives of the named defendants.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RAMON PEREZ, *Plaintiff,* | : | |
| VS. | : | C.A. No.: 06-0378-ML |
| THE RHODE ISLAND PUBLIC UTILITIES COMMISSION and THE STATE OF RHODE ISLAND, *Defendants,* | : | |

**PLAINTIFF, RAMON PEREZ', MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION**

***Procedural Preface/Travel of the Case:***

The plaintiff filed a Verified Complaint seeking the requested relief herein in Providence County Superior Court, on August 18, 2006.

On that date, the plaintiff sought a Temporary Restraining Order against the defendants, pending hearing on the Plaintiff's Request for a Preliminary and Permanent Injunction. Representatives of the plaintiff and the named- defendants appeared before the Honorable Alice Gibney, Associate Justice on that date, and the court upon consideration of the arguments of counsel, granted a Temporary Restraining Order, and assigned the matter for hearing on Injunctive Relief to August 28, 2006.

Prior thereto, the defendant, State of Rhode Island, pursuant to 28 U.S.C. §1441, removed this case to the United States District Court for the District of Rhode Island, on August 25, 2006. Accordingly, the Temporary Restraining Order has now lapsed. The plaintiff seeks to renew the same, pending a determination of the plaintiff's prayer for a

Preliminary and Permanent Injunction, insofar, for the reasons detailed, *infra*, the failure to grant such relief will result in irreparable harm to the plaintiff, and others similarly situated as of September 1, 2006. [1]

***Introduction:***

On July 14, 2006, certain amendments to R.I. Gen. Laws, § 39-14-18 (S 2677), became effective. A copy of the same is appended to the plaintiff's Verified Complaint and therein labeled as Exhibit "B." The plaintiff, and others similarly situated,[2] face the immediate threat of an increase in insurance rates, so prodigious, that it will preclude them from maintaining their livelihood and cause a loss of monies already expended in pursuance thereof. *See generally,* Plaintiff's Verified Complaint.

The gravamen of the instant Complaint centers on that portion of the amended Act, which requires a ten-fold increase in the carrying of liability insurance by the plaintiff, and others similarly situated. Further, the Act also requires a ten fold increase in property damage coverage to be secured by your plaintiff and others similarly situated.[3] As the defendant, PUC, controls the rates and fares which the plaintiff, and other similarly situated, may charge their customers or fares, those owners/certificate

---

[1] The Plaintiff is also filing and renewing certain other motions already filed and scheduled for hearing in the Providence County Superior Court, which, while assigned for hearing, had not been adjudicated prior to removal of the action to this Honorable Court.

[2] While the instant action is brought solely in the name of this plaintiff, due to the immediacy of the harm envisaged by the current legislation, counsel for the plaintiff reasonably anticipates that additional parties-plaintiff will hereafter seek intervention pursuant to Rule 24(a) of the Superior Court Rules of Civil Procedure. Further, this matter may ultimately entail a certification of a class or class interests pursuant to Rule 23 of the foregoing.

[3] Although of no moment to a resolution of the instant action, S 2677, was introduced by Senator Walaska, who upon information and belief, maintains or has maintained an ownership interest in one or more auto body repair facilities. Accordingly, it would appear the introduction of such legislation and his voting on the same would be in clear violation of Section 36-14-5 of the Rhode Island General Laws, as amended.

holders have no means to recoup such substantial costs increases and many, including the plaintiff, face loss of their livelihood and the substantial investments they have made in the same over the past several years. [4] Simply stated, the Act, as passed by the General Assembly, will require an inordinate and substantial increase in costs to the plaintiff, and others similarly situated, without any means of financial redress made available to them by the defendant, PUC.

The plaintiff, and others, face immediate and irreparable injury, and further contend that those portions of this legislation are violative and in derogation of rights secured to your plaintiff by both the United States Constitution and the Constitution of the State of Rhode Island, for those reasons as are set forth, *infra*.

***Legal Argument:***

**Rule 65**

Rule 65 of the Superior Court Rules of Civil Procedure provides that the Superior Court may grant a Temporary Restraining Order if it "(1) clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage, will result .... and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give (the) notice. On both such grounds, such relief is warranted.

A decision to grant or deny injunctive relief is addressed to the sound discretion of the trial justice and will not be disturbed on appeal unless the record demonstrates a

---

[4] The Court should be apprised that the defendant, PUC, by administrative regulation, has recently required your plaintiff and other owners to purchase newer (less than four (4) year old vehicles, on the supposed basis of public safety, irrespective of the actual condition or road worthiness of their prior vehicles or any similar vehicles they would otherwise require. Now, with the advent of the instant legislation, those investments could be rendered worthless as the plaintiff, and others, are unable to secure the levels of insurance required and those vehicles can no longer be maintained on the road.

clear abuse of discretion or error of law. *Hagenberg v. Avedisian,* 879 A.2d 436, 439 (R.I. 2004); *.DiDonato v. Kennedy*, 822 A.2d 179, 181 (R.I. 2003); *Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I. 1997). The Supreme Court has declared that no such finding of abuse can lie where the moving party has, at least, made out a prima facie case. *Iggy's v. Giroux*, 729 A.2d 701, 705 (R.I. 1999); *DiLibero v. Swenson*, 593 A.2d 42, 44 (R.I. 1991). Most significantly, the Supreme Court (as does the instant Rule) has long recognized that the threat of *immediate and irreparable harm* constitutes a valid ground for the awarding of equitable relief. *West Greenwich v. Stepping Stone Enterprises*, 416 A.2d 659, 663 (R.I. 1979); *Menard v. Woonsocket Teacher's Guild-AFT 951*, 117 R.I. 121, 126-127 (1976). Such immediate and irreparable harm faces the plaintiff.

More pointedly, the plaintiff, and others so situated, have no redress at law, insofar as the defendants are insulated, or at least will argue that they are insulated from liability under the doctrine of sovereign immunity. Absent consent to sue, whether direct or implicit, the plaintiff can seek no recourse as against either party defendant for the financial distress occasioned by the implementation of the foregoing statute. *See, Rhode Island Turnpike & Bridge Authority v. Nugent*, 95 R.I. 19, 29, 30 (1962). Nor would the

redress sought be actionable, or even necessarily cognizable under the provisions of chapter 31 of title 9 (State Tort Claims Act). Nor would an award of interest on the same necessarily follow. *Accord, Andrade v. State*, 448 A.2d 1293 (R.I. 1982); *Matarese v. Durham*, 689 A.2d 1057, 1058 (R.I. 1997).

Hence, the sole legal recourse available to the plaintiff would lie in equity. In addition, while the plaintiff and others may petition the Public Utilities Commission for a fare increase,[5] that relief remains speculative.

***The Takings Clause:***

The Fifth Amendment to the United States Constitution provides, in pertinent part, that no person shall "be deprived of life, liberty or property…nor shall private property be taken for public use, without just compensation." Rhode Island's Constitution set forth an analog state assurance against uncompensated takings at Article 1, Section 16. The purported public purpose behind the amended legislation is to insure adequate compensation to injured passengers and other members of the public who ride in the taxicabs subject to regulation by the defendant, PUC. The unfortunate consequence, however, that the monies necessary to fund this public purpose are being taken from a distinct class, the taxi operators, without providing them any recourse to compensate for the losses to be suffered. If the beneficent goal of this legislation is to protect the weary traveler, fundamental fairness would require that passenger to bear some of the costs of his or her passage.

The guise of the legislation, however, is of no moment as regards the Fifth Amendment's applicability. As the Takings Clause is made applicable to the States through the Fourteenth Amendment, *Chicago B. & Q. R. Co. v. Chicago*, 166 U.S. 226 (1897), it does not prohibit the taking of private property, but places a condition on the

---

[5] The plaintiff anticipates that a Petition for such a fare increase will be shortly sought before the defendant, PUC. That Petition, however, would not be dispositive or provide the necessary ameliorative relief sought by this action. The deliberate nature of the administrative process and the delay attendant to the same, will result in the immediate displacement of the plaintiff from his chosen field, as well as others unable to meet the financial strictures contemplated by the amended statute.

exercise of that power, to wit, compensation. *First Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 314 (1987), to wit. None is provided for within the legislation at the bar.

The United States Supreme Court has recognized that a direct governmental appropriation or invasion of private property is not necessary for a litigant to invoke the protection of the Fifth Amendment. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922). Governmental regulation of private property may, in some instances, be so onerous, that its effect is tantamount to a direct appropriation or ouster, and that such "regulatory takings" are compensable under the Fifth Amendment. *Lingle v. Chevron, U.S.A., Inc.*, ___ U.S. ___, (no.04-163) (2005). Fifth Amendment principles apply where governmental regulations "completely deprive an owner of all economically beneficial us[e] of her property." *Lingle, quoting, Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019 (1992). That situation is precisely the difficulty facing the plaintiff. Enforcement of the amended statute would not only deprive the plaintiff of the beneficial use of his property but would, moreover, render prior expenditures in furtherance of his livelihood a nullity.[6]

***The Contract Clause***

Article 1, Section 10 of the United States Constitution precludes the states from enacting any law "impairing the Obligation of Contracts." That federal Constitutional mandate finds its Rhode Island expression in Article 1, Section 12 of the Rhode Island

---

[6] The foregoing assumes, *arguendo*, the validity of the public purpose behind the present legislation, which, for purposes only of the instant motion, the plaintiff grants the defendants. *See e.g., Romeo v. Cranston Redevelopment Agency*, 105 R.I. 651, 658 (1969) (holding that the concept of public use should be liberally construed).

Constitution which provides that no law "impairing the obligation of contracts, shall be passed."

The legislation at issue, by its inherent nature, infringes on the right of the plaintiff to contract. It requires the plaintiff to bear a financial obligation but denies to him, and others similarly situated, the wherewithal to compensate for the same through the auspices of the free market.[7]

***Equal Protection/Disparate Treatment***

The plaintiff is of Latino origin, as are a majority of the affected taxi cab owners/operators within the City of Providence. Many of the same, moreover, are lawful aliens. Their passengers, however, are generally white and upscale.[8] The burden of shouldering the increased costs of operating their vehicles, however, is to be borne solely by members of this smaller class, without recourse to the passengers themselves.

While the "Equal Protection Clause" of the Fourteenth Amendment provides that "[N]o State shall .... deny to any person within its jurisdiction the equal protection of the laws," this statute accomplishes precisely that forbidden goal. Despite its facially neutral appearance, the statute will impact directly, and exclusively, those individuals, such as the plaintiff who toil the streets of Rhode Island in their cabs, at the behest of an economically more privileged and potent group.

In cases alleging disparate treatment, the plaintiff is required to prove a prima facie case consisting of variable elements that once proven by a preponderance of the

---

[7] As the immediacy of this statute required immediate action and relief in the courts, the plaintiff has not yet fully briefed this argument, the same will, as will the rest of this Memorandum, be supplemented prior to any hearing on a Preliminary or Permanent Injunction.

[8] Ironically, in an application for a taxi license, the defendant, PUC, requires disclosure of citizenship/alienage status, and would, therefore, presumably at hearing, under subpoena, be capable of attesting to the actual number involved. Why such inquiry is made, however, is perplexing , in that no

evidence create an inference of racial animus. *See, Furco Construction Corp v. Waters*, 438 U.S. 567, 577 (1978). *McDonnell Douglas Corp.,* 411 U.S. 792, 802 (1973). This line of cases was long ago recognized and adopted in Rhode Island. *See, Newport Shipyard v. Commission for Human Rights,* 484 A.2d 893, 898 (R.I. 1984). Moreover, the holding in those decisions was recently reaffirmed and expounded upon by the Rhode Island Supreme Court in *Neri v. Ross-Simons, Inc.*, ___ A.2d ___, (2006-049), holding, albeit in a termination context, that the principles of *McDonnell Douglas* still obtain. In Neri, the court employed these principles an unlawful discrimination charge based on age and gender.[9]

The exact parameters of the impact of this discrimination/disparate treatment will be borne out at hearing where the defendant and its records remain subject to subpoena. The concern, however, is that absent the immediate grant of a Temporary Restraining Order, that hearing may take place after the imposition of the terms of the statute, and will have already resulted in the loss by this plaintiff of his livelihood.

---

statute requires the same, and proof of lawful residency would be presumed upon receipt of a valid Rhode Island operator's license. See, R.I. Gen. Laws, § 31-10-3, as amended.

[9] Axiomatically, race-based discrimination is subject to an even higher level of "heightened scrutiny" than is age or gender based classifications, in assessing the validity of the public purpose. Even assuming, *arguendo*, that the classifications implied in this legislation are not racially related, they certainly are based on alienage, which, like gender and age issues, is subject to a "middle-level" of constitutional scrutiny.

Plaintiff,
RAMON PEREZ,
By his Attorney,

Emili Vaziri, Esquire (#4952)
160 Plainfield Street
Providence, RI 02909
(401) 944-6430
FAX: (401) 944-4161

## CERTIFICATION

I hereby certify that I caused to be served a true and correct copy of the within Memorandum, upon William Leuker, Esquire and Rebecca Partington, Esquire, bothe of the Department of the Attorney General, 150 South Main Street, Providence, RI 02903; RIPUC, legal Counsel, 88 Jefferson Boulevard, Warwick, RI 02888, and Division of Public Utilities, Legal Counsel, 89 Jefferson Boulevard, Warwick, RI 02889 by in hand service and via facsimile transmission, a copy of the same, this day, the 30th of August, 2006, to the above-named legal representatives of the named defendants.